**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
-------------------------------------------------------------------X
STELLA WHITFIELD,

                                Plaintiff,

       -against-

ROBERT WOOD JOHNSON UNIVERSITY
HOSPITAL, INC.,
ARAMARK HEALTHCARE SUPPORT
SERVICES, LLC,
JENNIFER SAMUCHA, individually, and
JOHN GRINITO, individually,

                             Defendants.
-------------------------------------------------------------------X

Civil Case No: 19-cv-00984

**COMPLAINT**

Plaintiff Demands A
Trial By Jury

Plaintiff STELLA WHITFIELD (hereinafter referred to as, "Plaintiff" and/or "WHITFIELD"), by and through her attorneys, DEREK SMITH LAW GROUP, PLLC, hereby complains of Defendant ROBERT WOOD JOHNSON UNIVERSITY (hereinafter referred to as, "RWJU HOSPITAL"), Defendant ARAMARK HEALTHCARE SUPPORT SERVICES, LLC (hereinafter referred to as, "ARAMARK"), Defendant JENNIFER SAMUCHA (hereinafter referred to as, "SAMUCHA"), individually, and Defendant JOHN GRINITO (hereinafter referred to as, "GRINITO"), individually, (hereinafter collectively referred to as, "Defendants"), upon information and belief, as follows:

**NATURE OF CASE**

1.      Plaintiff brings this action, charging that the Defendants violated Plaintiff's rights pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"), Equal Pay Act, 29 U.S.C. § 206(d) and 29 U.S.C. § 215(a)(3) ("EPA"), the Family and Medical

Leave Act of 1993 ("FMLA"), as amended, and the New Jersey Law Against Discrimination ("NJLAD"), based upon the supplemental jurisdiction of this Court pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C. § 1367, seeking declaratory and injunctive relief and damages to redress the injuries that Plaintiff has suffered as a result of, *inter alia*, sex/gender discrimination, hostile work environment, and retaliation by Defendants.

## JURISDICTION AND VENUE

2.      Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under Title VII, EPA, and FMLA. The Court also has jurisdiction pursuant to 28 U.S.C. §1331, and pendent jurisdiction thereto.

3.      Additionally, this Court has supplemental jurisdiction under the State law causes of action asserted in this action.

4.      On or about April 24, 2018 Plaintiff submitted a Charge (Charge No. 520-2018-01258) with the U.S. Equal Employment Opportunity Commission ("EEOC").

5.      On or about November 4, 2018, Plaintiff received a Right to Sue Letter from the EEOC.

6.      Plaintiff satisfied all administrative prerequisites and is filing this case within ninety (90) days of receiving the Right to Sue Letters from the EEOC.

7.      Venue is proper in this District based upon the fact that the events or omissions that gave rise to the claims asserted herein occurred within the District of New Jersey.

## PARTIES

8.      Plaintiff WHITFIELD is an individual woman who is a resident of the State of New Jersey in the County of Mercer.

2

9.      At all times material, Defendant RWJU HOSPITAL was and still is a domestic not-for-profit corporation duly existing by the virtue and laws of the State of New Jersey that does business in the State of New Jersey.

10.     At all times material, Defendant RWJU HOSPITAL is a healthcare service organization that provides comprehensive treatments encompassing everything from diabetes education to cardiac care.

11.     At all times material, Defendant ARAMARK is a foreign limited liability company duly existing by the virtue and laws of the State of Delaware that does business in the State of New Jersey.

12.     At all times material, Defendant ARAMARK provides food service, facilities, and uniform services to hospitals, universities, school districts, stadiums and other businesses around the world.

13.     At all times material, Defendants RWJU HOSPITAL and ARAMARK meet the definition of an "employer" under all applicable state and local statutes.

14.     At all times material, Defendant SAMUCHA was and is the District Manager of Defendant ARAMARK.

15.     At all times material, Defendant SAMUCHA held supervisory authority over Plaintiff with respect to her employment, including the power to hire and fire Plaintiff.

16.     At all times material, Defendant GRINITO was and is the General Manager of Defendant ARAMARK.

17.     At all times material, Defendant GRINITO held supervisory authority over Plaintiff with respect to her employment, including the power to hire and fire Plaintiff.

## STATEMENT OF MATERIAL FACTS

13.    In or around March 2000, Defendant RWJU HOSPITAL hired Plaintiff as a Food Service Supervisor.

14.    In or around early 2003, approximately three (3) years after Plaintiff commenced her employment with Defendant RWJU HOSPITAL, RWJU HOSPITAL also hired a male employee, KENNETH DUNBAR (hereinafter referred to as "DUNBAR"), as a Food Service Supervisor.

15.    Thereafter, as of early 2003, both Plaintiff and DUNBAR were similarly situated employees and both held the title of "Food Service Supervisor" at RWJU HOSPITAL. Additionally, both Plaintiff and DUNBAR performed jobs that required substantially equal skill, effort, and responsibility under similar working conditions.

16.    Over the next decade, Plaintiff and DUNBAR continued in their roles as Food Service Supervisors for RWJU HOSPITAL and were assigned nearly identical work duties and responsibilities by RWJU HOSPITAL.

17.    In or around October 2014, Defendant ARAMARK took over the staffing for RWJU HOSPITAL.

18.    In or around October 2014, Defendant ARAMARK became Plaintiff's employer, but she continued to work at RWJU HOSPITAL.

19.    At all times material, Defendant RWJU HOSPITAL continued to exercise significant control over Plaintiff including, *inter alia*, promulgating work rules and assignments and setting the conditions of Plaintiff's employment.

20.    At all times material, Defendants RWJU HOSPITAL and ARAMARK jointly employed Plaintiff.

21.    Immediately after Defendant ARAMARK took over the staffing at Defendant RWJU HOSPITAL, Plaintiff noticed that ARAMARK significantly increased her job duties and responsibilities. However, in stark contrast, Defendant ARAMARK did not increase DUNBAR'S job duties and responsibilities.

22.    Defendant ARAMARK assigned Plaintiff additional duties and responsibilities, which DUNBAR was not required to perform, even though they both held the same title of Food Service Supervisor at RWJU HOSPITAL.

23.    Specifically, by way of example only, Defendant ARAMARK required Plaintiff to complete all daily production sheets, create and manage the weekly employee schedule, oversee and complete bi-weekly payroll, complete regular meal rounds, maintain food temperature logs, and create and post weekly menus.

24.    Notably, Defendant ARAMARK did not require DUNBAR, a similarly situated Food Service Supervisor, to complete these tasks.

25.    Defendants discriminated against Plaintiff because of her gender.

26.    Moreover, around this same time, in or around October 2014, Plaintiff discovered that Defendant ARAMARK was paying DUNBAR at a higher hourly rate than ARAMARK was paying Plaintiff.

27.    Specifically, as of October 2015, Defendants were paying DUNBAR at a rate of $27.95 per hour, whereas Defendants were only paying Plaintiff at a rate of $26.06 per hour.

28.    Plaintiff was extremely upset to learn that despite performing equal or more work than DUNBAR, she was still earning substantially less than DUNBAR.

29.    Defendants discriminated against Plaintiff because of her sex/gender by paying her less than her male counterpart.

30.    In or around October 2015, Plaintiff met with Defendant ARAMARK'S Human Resources Department and requested an increase of her hourly pay rate. Plaintiff further complained to Defendant ARAMARK'S Human Resources Department that she was being discriminated against because of her sex/gender and was being paid less than DUNBAR, who was working in an identical position, despite Plaintiff's seniority over DUNBAR.

31.    In response to Plaintiff's complaints of sex/gender discrimination and unequal pay, Defendant ARAMARK'S Human Resources Department simply advised Plaintiff that they would "look into it." However, Defendant ARAMARK took no further action to investigate Plaintiff's complaints of workplace discrimination.

32.    In or around June 2016, Plaintiff again contacted Defendant ARAMARK'S Human Resources Department regarding her complaints of workplace discrimination.

33.    In response to Plaintiff's second complaint of workplace discrimination, Defendant ARAMARK'S Human Resources Department merely advised Plaintiff, "We will get back to you."

34.    In or around July 2017, Plaintiff met with Defendant ARAMARK's General Manager, Defendant GRINITO, and complained to him about workplace discrimination and unequal pay.

35.    In response to Plaintiff's complaints of discrimination, Defendant GRINITO informed Plaintiff that she would receive a raise in October 2017.

36.    However, in or around October 2017, Plaintiff did not receive the pay raise that was promised by GRINITO in response to Plaintiff's complaint of unequal pay.

37.    In or around late October 2017, Plaintiff contacted Defendant GRINITO again to inquire about the status of her raise, but received no response.

38.     In or around January 2018, Defendant ARAMARK increased Plaintiff's rate of pay to $27.25 per hour. However, DUNBAR also received a raise as this was a standard annual pay increase that was given to all ARAMARK hourly employees.

39.     Notably, this standard pay raise did not correct the unequal pay difference between Plaintiff and DUNBAR. Specifically, in or around January 2018, Defendant ARAMARK paid Plaintiff at an hourly rate of $27.25 and paid DUNBAR at a greater hourly rate of $29.08.

40.     Defendants continued their pattern and practice of discriminating against Plaintiff because of her sex/gender.

41.     In or around early 2018, Plaintiff again complained about gender discrimination and the unequal pay difference, but Defendants continued to ignore Plaintiff's complaints and continue to pay DUNBAR at a substantially higher hourly pay rate than Plaintiff.

42.     Moreover, Defendants have wholly failed to investigate Plaintiff's complaints of workplace discrimination and unequal pay.

43.     Plaintiff experienced extreme anxiety and depression as a result of Defendants' discrimination and the environment turned hostile.

44.     Quite shockingly, Defendants retaliated against Plaintiff for engaging in protected activity by targeting her and clearly setting her up for imminent termination.

45.     Specifically, following Plaintiff's complaint of sex/gender discrimination, Defendants have subjected Plaintiff to unwarranted disciplinary action.

46.     By way of example only, on or about March 24, 2018, Defendants issued Plaintiff a pre-textual "final written warning."

47.     Notably, in her nearly two-decade tenure with RWJU HOSPITAL, Plaintiff was never disciplined or reprimanded *until* her recent complaint of discrimination and unequal pay.

48. On or about June 24, 2018, Defendants issued Plaintiff another unwarranted "final written warning."

49. In or around Summer of 2018, Plaintiff began seeking mental health counseling as a result of the hostile work environment that Defendants subjected her to.

50. On or about October 5, 2018, Plaintiff became so depressed and anxious that she was forced to take medical absence from work, pursuant to her doctor's instructions.

51. In or around October 2018, Plaintiff applied and was approved for job-protected medical leave under the Family and Medical Leave Act ("FMLA").

52. Accordingly, from October 5, 2018 through December 3, 2018, Plaintiff was on medical leave for daily out-patient psychiatric treatment with a counseling center.

53. On or about December 6, 2018, less than 3-days after Plaintiff returned from approved FMLA leave, Defendants unreasonably issued Plaintiff a 30-day Performance Improvement Plan ("PIP"), which Defendants subsequently extended for an additional 60-days, without cause or explanation.

54. To date, Plaintiff continues to seek mental health treatment as a result of Defendants' discriminatory and retaliatory conduct.

55. Based on the circumstances detailed herein, it is abundantly clear that Defendants discriminated against Plaintiff because of her sex/gender, subjected Plaintiff to a hostile working environment, and thereafter retaliated against Plaintiff for engaging in protected activity.

56. As a result of Defendant's actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and severely emotionally distressed.

57. As a result of Defendant's discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer severe emotional distress and physical ailments.

58.    As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, annual incremental raises, benefits, and other compensation which such employment entails.  Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional distress.

59.    As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages against Defendant.

60.    The above are just some examples of the unlawful discrimination to which Defendant subjected Plaintiff.

## CAUSES OF ACTION

### AS A FIRST CAUSE OF ACTION
### FOR DISCRIMINATION UNDER TITLE VII
**[Not Against Individual Defendants]**

61.    Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

62.     Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a) [Section 703] provides that it shall be an unlawful employment practice for an employer:

> "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;...."

63.    Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by subjecting Plaintiff to discrimination on the basis of her sex/gender, causing a hostile work environment and retaliation based on the same.

64.    Plaintiff hereby makes a claim against Defendants under all of the applicable

paragraphs of Title VII.

65.     Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A SECOND CAUSE OF ACTION
## FOR RETALIATION UNDER TITLE VII
### [Not Against Individual Defendants]

66.     Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

67.     Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) [Section 704] provides that it shall be an unlawful employment practice for an employer:

> "(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

68.     Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e et seq., by retaliating against Plaintiff with respect to the terms, conditions or privileges of her employment because of her opposition to the unlawful employment practices of Defendants.

69.     Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A THIRD CAUSE OF ACTION
## FOR DISCRIMINATION AND RETALIATION UNDER THE EPA
### [Against All Defendants]

70.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

71.     Plaintiff claims Defendants violated the EPA, 29 U.S.C. §206(d)(1), which provides as follows:

> (1) Prohibition of sex discrimination. No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such

10

employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: Provided, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

(2) No labor organization, or its agents, representing employees of an employer having employees subject to any provisions of this section shall cause or attempt to cause such an employer to discriminate against an employee in violation of paragraph (1) of this subsection.

(3) For purposes of administration and enforcement, any amounts owing to any employee which have been withheld in violation of this subsection shall be deemed to be unpaid minimum wages or unpaid overtime compensation under this chapter.

72.    Plaintiff, as a female, was discriminated against by Defendants because of her sex/gender and has suffered damages as set forth herein. Plaintiff also claims unlawful retaliation under the EPA for her opposition to Defendants' unlawful employment practices.

**AS A FOURTH CAUSE OF ACTION**
**<u>RETALIATION AND INTERFERENCE UNDER THE FMLA</u>**
**[Not Against Individual Defendants]**

73.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

74.    Section 2615 of the FMLA states as follows:

Prohibited acts (a) Interference with rights (1) Exercise of rights

It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

(2) Discrimination

11

It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

75.    Defendants unlawfully interfered, restrained, and denied Plaintiff's right to exercise and attempt to exercise his rights under the above section and discriminated and retaliated against Plaintiff for opposing Defendant's unlawful employment practice and attempting to exercise his rights.

76.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS A FIFTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER NEW JERSEY STATE LAW
### [Against All Defendants]

77.    Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

78.    NJLAD Section 10:5-12(a) sets forth in pertinent part as follows:

"It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination: (a) For any employer, because of the race, creed, color, national origin, ancestry, age, marital status, civil union status, domestic partnership status, affectional or sexual orientation, genetic information, sex, gender identity or expression, disability or atypical hereditary cellular or blood trait of any individual, or because of the liability for service in the Armed Forces of the United States or the nationality of any individual, or because of the refusal to submit to a genetic test or make available the results of a genetic test to an employer, to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

79.    Defendants engaged in unlawful discriminatory practices prohibited by NJLAD Section 10:5 et seq., by discriminating against the Plaintiff because of her sex/gender causing a hostile work environment and retaliation based on the same.

80.    Plaintiff hereby makes a claim against Defendants under all of the applicable

12

paragraphs of the NJLAD Section 10.

81.     Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A SIXTH CAUSE OF ACTION
## FOR RETALIATION UNDER NEW JERSEY STATE LAW
### [Against All Defendants]

82.     Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

83.     New Jersey Law Against Discrimination §10:5-12(d) provides that it shall be an unlawful discriminatory practice:

> "For any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted by this act."

84.     Defendants engaged in unlawful discriminatory and retaliatory practices prohibited by NJLAD Section 10:5 et seq., by retaliating and otherwise discriminating against Plaintiff, including, but not limited to, terminating Plaintiff's employment, because of Plaintiff's opposition to Defendants' unlawful employment practices.

85.     Defendants violated the above and Plaintiffs suffered numerous damages as a result.

## AS A SEVENTH CAUSE OF ACTION
## FOR AIDING AND ABETTING UNDER NEW JERSEY STATE LAW
### [Against All Defendants]

86.     Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

87.     New Jersey Law Against Discrimination §10:5-12(e) provides that it shall be an

13

unlawful discriminatory practice: "For any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so."

88.     Defendants engaged in an unlawful discriminatory practice prohibited by NJLAD Section 10:5 et seq., by aiding, abetting, inciting, compelling, and/or coercing the discriminatory, unlawful, and retaliatory conduct as stated herein.

89.     Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS AN EIGHTH CAUSE OF ACTION**
**FOR DISCRIMINATION IN WAGES & RETALIATION**
**UNDER NEW YORK LABOR LAW § 194**
**[Against All Defendants]**

90.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth more fully herein.

91.     New York Labor Law § 194 provides that:

"No employee shall be paid a wage at a rate less than the rate at which an employee of the opposite sex in the same establishment is paid for equal work on a job the performance of which requires equal skill, effort and responsibility, and    which    is    performed    under    similar    working conditions, except where payment is  made pursuant to a differential based on:
a. a seniority system;
b. a merit system;
c. a system which measures earnings by quantity or quality of production;  or
d. a bona fide factor other than sex, such as education, training, or experience. Such factor: (i) shall not be based upon or derived from a sex-based differential in compensation and (ii) shall be job-related with respect to the position in question and shall be consistent with business necessity. Such exception under this paragraph shall not apply when the employee demonstrates (A) that an employer uses a particular employment practice that causes a disparate impact on the basis of sex, (B) that an alternative employment practice exists that would serve the same

14

business purpose and not produce such differential, and (C) that the employer has refused to adopt such alternative practice."

92.    Defendants required Plaintiff to perform the same or substantially the same job position as male employees, requiring equal skill, effort, and responsibility under similar working conditions at the same establishment, and paid Plaintiff less than such male employees. The differential rate of pay was not part of or occasioned by a seniority system, merit system, a system based on the quantity or quality of production, or upon a bona fide factor other than gender, such as education, training, or experience.

93.    Defendants engaged in patterns, practices and/or policies of employment which willfully, and in the alternative unwilfully, discriminated against Plaintiff on the basis of sex/gender by paying Plaintiff a lesser rate of pay than that paid to male employees performing the same or substantially similar job duties which require equal skill, effort, and responsibility, and under the same working conditions and at the same establishment.

94.    Additionally, New York Labor Law § 194 provides that "No employer shall prohibit an employee from inquiring about, discussing, or disclosing the wages of such employee or another employee."

95.    Defendants engaged in an unlawful discriminatory practice by retaliating against Plaintiff.

96.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

97.    As a direct and proximate result of Defendants' unlawful, discriminatory, and retaliatory conduct in violation of the New York Labor Law, Plaintiff suffered, and continues to suffer, harm for which Plaintiff is entitled to an award of monetary damages and other relief.

98.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

WHEREFORE, Plaintiff respectfully requests a judgment against the Defendants in an amount to be determined at trial for all emotional distress, lost wages, back and front pay, punitive damages, liquidated and statutory damages, treble damages, attorney's fees, costs and interest and awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

## JURY DEMAND

Plaintiff demands a jury trial on all issues to be tried.

Dated:   New York, New York
January 23, 2019

**DEREK SMITH LAW GROUP, PLLC**
*Attorneys for Plaintiff*

Rachel Allen, Esq.
One Penn Plaza, Suite 4905
New York, New York 10119
(212) 587-0760

16